IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

RALPH W. SURRITTE JR.,           )
                                 )
            Plaintiff,           )
                                 )
vs.                              )   Case No. 13-3433-CV-S-ODS
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social Security, )
                                 )
            Defendant.           )

**ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability benefits. The Commissioner's decision is affirmed.

I.  BACKGROUND

Plaintiff was born in May 1961, completed the tenth grade, and has prior work experience as, among other things, a carpenter, material handler, assembler, fast food cook, cashier checker, convenience store manager, and lumber grader. He alleges he became disabled on July 1, 2009, due to a combination of degenerative disc disease, hip pain, pancreatitis, and uriticaria (commonly known as hives).

Plaintiff does not raise any issue with respect to the ALJ's assessment of the medical records, so there is no need to engage in an exhaustive discussion of Plaintiff's medical history. However, the Court will summarize the ALJ's findings and the medical history in order to provide necessary context.

Plaintiff has a history of low back pain and right hip pain. In 2008 he was determined to be suffering from right-sided entrapment of the femoral cutaneous nerve (also known as meralgia paresthetica) and was initially provided injections. The relief

provided was short-lived, and in May 2008 he underwent nerve sectioning to relieve the entrapment. R. at 235-36. In September 2010, an MRI revealed degenerative disc disease at L4-L5 with a protrusion that appeared larger than one noted previously in August 2007. However, the MRI did not reveal anything that would explain pain in Plaintiff's right lower leg. R. at 459.

According to the ALJ, thereafter

> "there are almost no objective tests or notations of symptoms in the medical records which support the claimant's alleged level of pain, fatigue and incapacity. The record is devoid of any evidence showing a significant degree of muscle atrophy, paravertebral muscle spasm, sensory or motor loss, reflex abnormality, gait disturbance, or significant reduced range of motion to the spine or joints. Neither is there any evidence of significant radiculaopathy, spinal stenosis, spondylosis or spondylolisthesis. In fact, in August 2010, the claimant reported to his doctor that he was able to walk without a cane. Dr. Morgan's notes show that the claimant generally had normal range of motion in the cervical and lumbar spine, tolerated straight leg raises at 80 degrees, had a negative Spurling's maneuver, and had normal gait and station. In January 2011 Dr. Lennard observed that the claimant had normal muscle tone and strength, normal alignment, and no joint enlargement, crepitus, masses or tenderness.

R. at 15-16 (citations to the Record omitted).

With respect to Plaintiff's abdominal/intestinal problems, the ALJ noted the medical records indicate these issues are largely resolved or controlled. He was initially diagnosed with pancreatitis in July 2008, but a computed tomography exam conducted shortly thereafter was normal. Plaintiff was found to have an enlarged liver, but his liver functions were normal. The ALJ found that

> [d]espite the lack of objective evidence indicating the cause, the claimant continued . . . experiencing intermittent abdominal pain during the period of alleged disability. Dr. Chambers noted in August 2010 that the claimant's lab results were normal and he did not see anything in the lab results that would lead to the claimant's current medical problems. There is evidence, however, that the claimant did not comply with the doctor's treatment recommendations for exercise and a healthy diet. The claimant further declined further work-up of his abdominal pain in March 2010.

2

R. at 16 (citations to the Record omitted). Plaintiff's hives – which may or may not be related to this intestinal problems – appear to have manifested initially in May 2008. While "he has experienced numerous flare-ups throughout the period of alleged disability . . . the claimant reported to Dr. Lewis that as long as he consistently takes his prescription medication on a daily basis, his hives are well-controlled. He also stated that if he misses two or three doses, the hives would flare." R. at 17. Plaintiff testified that his medication affects his ability to focus and concentrate, but the ALJ found "that these complaints were not noted by the claimant's doctors in their medical notes. In any event, while the claimant's outbreak[s] of hives are undoubtedly uncomfortable, painful and limiting, the evidence indicates that they can be relatively well-controlled with prescription and over the counter medication, and the outbreaks are not so severe as to prevent all work activity." R. at 17. It should also be noted that in addition to Plaintiff's refusal to follow treatment plans or pursue additional testing, Plaintiff's treating doctor wrote that Plaintiff appeared unconcerned about these problems. R. at 361.

The ALJ found Plaintiff's subjective complaints were not fully credible. The primary reasons for this finding include:

1. Plaintiff's activities of daily living were inconsistent with the degree of limitation he reported
2. Clinical and objective findings were inconsistent with his alleged limitations
3. Plaintiff had not followed his doctors' recommendations regarding treatment and had not pursued recommended testing
4. Plaintiff's statements to his doctors conflicted with his testimony
5. Plaintiff had a sporadic work history and "[w]ith his history of low earnings, the claimant may possibly receive more in supplemental security income than he earned from employment in all but 13 of his last 32 years of employment"
6. Plaintiff sought and obtained unemployment benefits after leaving his last job, which means Plaintiff represented that he was able to work and looking for work.

The ALJ then found Plaintiff retained the residual functional capacity ("RFC") to stand and walk for thirty minutes at a time and six hours per day, sit for thirty minutes at a time and a total of six hours per day, lift ten pounds frequently and twenty pounds occasionally. The ALJ further limited the RFC by finding Plaintiff "can pay attention well

3

enough to sustain a simple routine or simple repetitive tasks, but cannot sustain a high level of concentration such as sustained precision work or work that requires sustained attention to detail." R. at 14. Based on the testimony of a vocational expert, the ALJ found Plaintiff could not perform his past relevant work but that Plaintiff could work as a production assembler or cashier and thus was not disabled.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

### A.

As stated, Plaintiff's primary arguments do no challenge the ALJ's assessment of the medical records. Instead, they focus on other aspects of the credibility determination. Plaintiff argues the ALJ (1) erred in discrediting his testimony based on his motivations/work history, and (2) improperly characterized his daily activities. In evaluating these issues, it must be remembered that these issues arise in the larger context about assessing a claimant's credibility. In assessing a claimant's credibility the ALJ is required to consider a variety of factors *including*: objective medical evidence, the claimant's daily activities, the duration, frequency and intensity of symptoms,

4

precipitating and aggravating factors, effectiveness and side effects of medication, and functional restrictions. Plaintiff attacks two relatively minor aspects of the ALJ's credibility determination, leaving what are arguably the most important aspects unaddressed. Under these circumstances, it is difficult if not impossible for the Court to conclude the ALJ's determination lacks substantial support in the Record as a whole.

But to Plaintiff's points: He concedes an ALJ may consider a claimant's motivation for seeking benefits. E.g., Eichelberber v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004); Gaddis v. Chater, 76 F.3d 893, 896 (8th Cir. 1996). Plaintiff's argues the ALJ erred by indicating Plaintiff would earn more in *Supplemental Security Income* than he had earned through most of his work, when in reality Plaintiff was applying for *Disability* benefits and not SSI. The Court is not convinced this error undermines the ALJ's point. The essence of the ALJ's observation remains valid: that Plaintiff had a sporadic work history marked by relatively low earnings, and that receiving benefits might be seen as more lucrative than returning to the work force. To the extent Plaintiff challenges the weight the ALJ assigned to this factor, the Court concludes this is an issue – like all factual matters – is left to the ALJ for consideration. The Court also reiterates that there a multitude of more significant factors supporting the ALJ's credibility determination.

Plaintiff also quibbles with the depiction and importance the ALJ ascribed to Plaintiff's daily activities. Specifically, he (1) disputes the ALJ's characterization that he folds laundry and loads and unloads the dishwasher and (2) objects to the importance the ALJ attached to Plaintiff's car trip to New Orleans and subsequent cruise to Cozumel and the Yucatan. With respect to the former issue, Plaintiff testified that he unloaded the dishwasher, R. at 52, and in response to clarifying questions from counsel he testified that he only unloaded the dishwasher's top rack. R. at 54. The ALJ was not obligated to accept the second answer and reject the first – and even if there is some difference between Plaintiff's preferred answer that he can unload the top rack of the dishwasher and the ALJ's statement that Plaintiff can "load and unload the dishwasher, that answer is not so significant as to justify reversal, particularly in light of the other substantial evidence supporting the ALJ's credibility determination. Similarly, the ALJ was not required to believe Plaintiff's testimony that he is unable to fold laundry.

5

The ALJ found Plaintiff's car ride to New Orleans and subsequent cruise significant because that activity appeared to conflict with Plaintiff's testimony about the limits of his ability to sit and stand, including his ability to sit in a car. Plaintiff faults the ALJ for not asking who drove to New Orleans or if Plaintiff and his wife made frequent stops along the way. It should be noted that Plaintiff's counsel did not ask these questions, either. Regardless, the ALJ was entitled to find the trip contradicted Plaintiff's testimony that he could not sit for more than thirty minutes, following which he would need to stand and stretch for fifteen to twenty minutes. R. at 49, 51.

B.

Plaintiff contends the ALJ's questions to the vocational expert ("VE") were inadequate for failing to include any limitations related to hives. This is not completely accurate, as both the RFC and some questions posed to the VE included limitations related to hives. R. at 57-58. Plaintiff's real grievance is that the questions posed did not include the limitations Plaintiff alleged – but the questions need only contain the limitations found to exist. E.g., Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011). The hypothetical question relied upon was proper.

III. CONCLUSION

For these reasons, the Commissioner's final decision is affirmed.
IT IS SO ORDERED.

DATE: July 29, 2013

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT